RUPPERT v. TOWNSHIP SCHOOL DISTRICT OF MARION. TOWNSHIP.

1. Quo Warranto—When May be Filed to Inquire Into Legality of Public Office.

Under 3 Comp. Laws 1915, § 13524, information in nature of *quo warranto* may be filed when any person shall usurp, intrude into, or unlawfully hold or exercise any public office or any franchise within State, and information may be filed by any citizen of county by special leave of court or judge thereof (section 13550) in circuit court, as well as in Supreme Court (section 13549).

2. Schools and School Districts—Townships.

Townships and school districts are separate and distinct corporations.

3. Quo Warranto—Parties—Townships—Schools and School Districts.

In *quo warranto* proceedings to test validity of election authorizing organization of township into single school district under sections 1, 4, 5, 8, chap. 4, pt. 1, Act No. 319, Pub. Acts 1927, township is necessary party, since election was township election.

Certiorari to Osceola; Cutler (Hal. L.), J. Submitted October 14, 1930. (Docket No. 74, Calendar No. 35,126.) Decided December 2, 1930.

*Quo warranto* proceedings by George A. Ruppert and others against Township School District of Marion township, Osceola county, to test the validity of the organization of defendant. Plaintiffs review order dismissing their petition by certiorari. Affirmed.

*Henry Miltner,* for plaintiffs.

*A. W. Penny,* for defendant.

Potter, J.   An information in the nature of *quo warranto* was filed by plaintiffs in the circuit court to test the validity of the organization of the school district of the township of Marion, Osceola county, to declare the members of the school board in such newly-created school district not entitled to their respective offices, and for other relief.   The trial court, holding the township of Marion was a necessary party and was not joined as such, dismissed the proceedings, and plaintiffs bring certiorari.

Prior to the passage of the judicature act (3 Comp. Laws 1915, § 12004 *et seq.*) the practice on informations in the nature of *quo warranto* was fairly well settled.   *Fractional School District* v. *Board of School Inspectors,* 27 Mich. 3; *Scrafford* v. *Board of Sup'rs of Gladwin Co.,* 41 Mich. 647; *Roeser* v. *Gartland,* 75 Mich. 143.   The judicature act brought together the statutes previously in force in relation to informations in the nature of *quo warranto* and added some new provisions distinctly changing the practice which had prevailed.

An information in the nature of *quo warranto* may be filed when any person shall usurp, intrude into, or unlawfully hold or exercise any public office or any franchise within this State.   Section 13524, 3 Comp. Laws 1915.   Informations may be filed by any citizen of the county by special leave of the court or a judge thereof (section 13550, 3 Comp. Laws 1915) in the circuit courts of this State as well as in the Supreme Court, section 13549, 3 Comp. Laws 1915.

"A petition may be filed in the circuit court of any county of this State whenever it shall be made

to appear that material fraud or error has been committed at any election in such county at which there shall have been submitted any constitutional amendment, question, or proposition to the electors of the State or any county, township or municipality thereof." 3 Comp. Laws 1915, § 13551.

"Such petition shall be filed within thirty days after such election by the attorney general or the prosecuting attorney of the proper county on his own relation, or on the relation of any citizen of said county without leave of the court, or by any citizen of the county by special leave of the court or a judge thereof. Such petition shall be filed against the municipality wherein such fraud or error is alleged to have been committed." 3 Comp. Laws 1915, § 13552.

In *Youells* v. *Morrish,* 218 Mich. 194, it is said:

"The legislature by adopting these three sections evidently intended a change in the practice; otherwise nothing was accomplished. A reading of these sections clearly evidences, we think, this legislative intent: That where it is claimed there was fraud or there was error, invalidity, in an election at which any constitutional amendment, question, or proposition has been voted upon, the proceedings to test the election must be against the municipality affected by the proceedings and must be brought within 30 days after the election. The purpose of the change is clearly apparent; the municipality to be affected by the proceedings should have an opportunity to be heard, and public policy requires that there should be a speedy determination of the validity of the election before engagements are entered into by such municipality. We repeat what has heretofore been adverted to, that this is not a contest between rival claimants to an office; plaintiff makes no claim that he is entitled to the office held by any of the defendants; his claim being that they are not entitled

to hold such offices because the proceedings by which the municipal corporation was established are erroneous and invalid.    To assail such proceedings he must do so in the manner pointed out by the statute.''

This language was approved in *Sprister* v. *City of Sturgis,* 242 Mich. 68.    The language of the statute is that such petition shall be filed against the municipality wherein such fraud or error is alleged to have been committed.    What municipality is it where the fraud or error here involved is alleged to have been committed?    This we think is clearly answered by the statute.

''Whenever a majority of the qualified school electors of any organized township present and voting, vote in favor of organizing said township into a single school district, such township shall, after the election of the board of education as hereinafter provided, be a single school district and shall be governed by the provisions of this act.''    Section 1, chap. 4, pt. 1, Act No. 319, Pub. Acts 1927.

''The question of changing any organized township into a single school district to be governed by the provisions of this act, shall not be submitted to the qualified electors of said township until a petition therefor, signed by one-fourth of the qualified school electors of such township requesting the submission of such proposition, shall be filed in the office of the township clerk.''    Section 4, chap. 4, pt. 1, Act No. 319, Pub. Acts 1927.

Upon receipt and filing of such petition, it is made the duty of the township clerk to call a meeting of the township board, and it is the duty of the township board to attend such meeting, and—

''It shall be the duty of said township board at such meeting to consider the said petition with the names appearing thereon, and if it be found and

determined by said board that one-fourth of the qualified school electors of the said township have signed said petition, said township board shall submit the question of organizing said township as a single school district as provided under the provisions of this act. It shall be the duty of the township board to call an election at which the question of the organization of said township into a single school district shall be submitted to the qualified school electors of such township." Section 5, chap. 4, pt. 1, Act No. 319, Pub. Acts 1927.

"Whenever a majority of the qualified school electors voting in any township votes in favor of the organization of any township into a single school district, it shall be the duty of the township board to call a township election which shall be held within 15 days, at which election the board of education for the township school district shall be elected by the qualified school electors of such township." Section 8, chap. 4, pt. 1, Act No. 319, Pub. Acts 1927.

Subsequent sections of the statute provide that the township board shall make and file with the county commissioner of schools in the county in which such township is located, a certified copy of the petition and of all proceedings in relation to the organization of such township into a township school district.

Townships and school districts are separate and distinct corporations. In *MacQueen* v. *Port Huron City Com'n,* 194 Mich. 328, it is said:

"Fundamentally, provision for and control of our public school system is a State matter, delegated to and lodged in the State legislature by the Constitution in a separate article entirely distinct from that relating to local government. The general policy of the State has been to retain control of its school system, to be administered throughout the State under State laws by local State agencies organized

with plenary powers independent of the local government with which, by location and geographical boundaries, they are necessarily closely associated and to a greater or less extent authorized to .cooperate. 'Education belongs to the State. It is no part of the local self-government inherent in the township or municipality except so far as the legislature may choose to make it such.' *Belles* v. *Burr,* 76 Mich. 1; *Attorney General* v. *Board of Education,* 154 Mich. 584. The general school laws were carefully planned and enacted to guard that distinction; provision was made for organization of the common school districts, with officers elected at school meetings by electors with defined qualifications, and who as a school board were given large plenary powers and control of school matters, practically independent from the local government of municipalities in which the schools were situated.''

As said in *People* v. *Township of Munising,* 213 Mich. 629:

''The school district is as separate and distinct from the township, in its legal and corporate identity, even though the territorial limits may be the same, as is one county from another.''

We think it clear from the statutory provisions above quoted that the election here involved was a township election; that the fraud or error alleged to have been committed was committed in a township election, if at all, and the township of Marion therefore was a necessary party to the proceedings. It was only through the action of the electors of the township in the manner prescribed by statute that the school district could be organized. The trial court came to a correct conclusion, and judgment is affirmed.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.